## **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………….i

TABLE OF AUTHORITIES…………………………...…………………..………..ii

SUMMARY OF THE ARGUMENTS...………..……………………..…...vi

BRIEF IN OPPOSITION……..……………………..………………..……..1

I.    Procedural History……………………………………………………1

II.   Argument and Law

    A. The Standard for Granting Summary Judgment Is Well
    Established…………………………………………………..………2

    B. The City's 4 Arguments Against The Ohio Declaratory Judgment
    Claim Fail………………………………………………………3

        1. This Court Never Ruled That "…Cleveland's Differential Pay
        To Plaintiff Graf…Does Not Violate USERRA………..……..3
        Different
        2. Neither Of The Ohio Supreme Court Opinions The City Relies
        On Is A Controlling Precedent On The Dispositive Issues Of
        This Case…………………………………………………………4

        3. Cleveland's PKL Ordinance Violates The U.S. and Ohio
        Constitutions…………………….…………………………..14

        4. There is No "Adequate Remedy" Graf Has Chosen Not To
        Exercise Such That He Can't Prove The Need For "Speedy
        Relief"………………….……………….……………….15

    C. The City's Confusing Argument Does Not Entitle It To Judgment
    As A Matter of Law On The Reservist's Comparable Leave Claim
    …………………………………………………………………17

<u>TABLE OF AUTHORITIES</u>

<u>Case Law</u>

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, at 248 (2000)…….….…….2

*Barrett v. Whirlpool Corp.,* 566 F.3d 502, 511 (6th Cir., 2009)…….….…….2

*Beachwood v. Bd. Of Elections of Cuyahoga Cty.,* 176 Ohio St. 369, 371…
…………………………………………………………………………..12

*Brill v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 35251 (S.D. Ohio, 2012)……..……………………………………………………..……… .2

*Canton v. State,* 95 Ohio St.3d 149 (Ohio, 2002), *syllabus*………………13

*City of Cleveland v. The State of Ohio*, 138 Ohio St.3d 232, 2014-Ohio-86, at ¶¶7-9 (Ohio, 2014)…………………………………………………..12

*Northern Ohio Patrolman's Benevolent Assn., v. Parma*, 61 Ohio St.2d 519 (Ohio,1980)……………………………………………………7,8,9,14

*Ohioans for Concealed Carry, Inc., et al., v. City of Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, at ¶¶22-26…………..………………………12,13

*Otten v. Cincinnati,* 10 Ohio Ops., 276, at 277, 278 (Hamilton Cty., 1937)
………………………………………………………………………5,6

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-151 (1986)
………………………………………………………………………….2

*State Ex Rel. Morrison v. Beck Energy Corp.*, 143 Ohio St.3d 271, at 274-276 (Ohio, 2015)…………………………………………………………..12

*State Ex Rel. Fraternal Order of Police, Ohio Labor Council, Inc., et al., v. Sidney*, 91 Ohio St.3 399 (Ohio, 2001)……………..……..7,9,10,11,14

Ohio Attorney Gen. Opns., No. 1468, dated 6/17/1960, p.423……………..6

<u>Statutes</u>

<u>Ohio Laws</u>
R.C. 4117.01(c)(4)…………………………………………….…………x,10

R.C. 4117.10(A)…………………………………………………….……x,10

R.C. 5923.05……………………………………………………….………vii

R.C. 5923.05(A)…………………………………...……………...…….vii,viii,x,5,6,11

R.C. 5923.05(B)…………………………………………...……………viii

R.C. 5923.05(F)………………………………………...…………………..10

R.C. 5923.05(G)………………………………………...…………………10

<u>Cleveland Ordinances</u>
CCO §171.57……………………………………………...………vii,viii

<u>U.S. Code</u>

38 U.S.C. 4301, *et. Seq*…………………………………….………vii

38 U.S.C. 4311……………………………………………...…………1,2

38 U.S.C. 4316(b)(1)……………………………………...…...……..2,4,17

USERRA §4316………………………………...…………………..1,2,17,18

<u>Constitutional Provisions</u>

<u>U.S. Constitution</u>
Article I, §8…………………………………………………….……..9

Article I, §10………………………………………………………..…9

Article II, §2…………………………………………………………..9

Second Amendment……………………….…………………………………….9


Ohio Constitution
Article IX, §1…………………………………………….……………….……9

Article IX, §4……………………….…………………………….…………….9

Article IX, §5……………………………………………………………….…...9


Rules of Court

Federal Rule of Civil Procedure 12(c)……………………………………1

Federal Rule of Civil Procedure 56(a)……………………….…………2


Authoritative Treatises

 "Municipal Home Rule", Members Only, Vol. 128, Issue 8, 1/26/2010, LSC Staff of the Ohio General Assembly, at pp.1, 7-9………………………..9


Appendices

*Brill v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 35251 (S.D. Ohio, 2012)

*Otten v. Cincinnati,* 10 Ohio Opinions 276 (Hamilton Cty., 1937)

Ohio Attorney Generals Opinions, Op. No. 1468, DTD 6/17/1960

Constitutional Provisions
U.S. Constitutional Provisions

Art. I, §8
Art. I, §10

Art. II, §2
Second Amendment

<u>Ohio Constitutional Provisions</u>
Art. IX, §1
Art. IX, §4
Art. IX, §5

<u>Statutory Authorities</u>
<u>U.S. Code Provisions</u>
38 U.S.C. §4311
38 U.S.C. §4316(b)(1)

<u>Ohio Revised Code Provisions</u>
R.C. 4117.01(c)(4)
R.C. 4117.10(A)
R.C. 5923.05(B)
R.C. 5923.05(G)

<u>Rules of Court</u>
<u>Federal Rules of Civil Procedure</u>
Fed.R.Civ.P. 12(c)
Fed.R.Civ.P. 56(a)

## Summary of Arguments

A. Applicable Statutes.

The Plaintiff (Leonard Graf) (hereinafter "the Reservist") is a Patrolman in the Cleveland Police Department ("CPD").  This is his full-time occupation, a civil-service position he has held since 2008.  He is also currently a drilling military reservist (a helicopter mechanic in the Ohio Army National Guard).   He enlisted in the National Guard in 2006.  He has prior, non-career service in the U.S. military.  He was formerly a U.S. Marine, on active duty from 1987-1991, and reserve duty from 1992-1996.  Since 2008 he has been both a member of the CPD and of the Ohio National Guard.

As a drilling reservist, Graf has made 1 deployments to combat zones during the Global War on Terror, most recently from 2009 to 2010, while serving in the CPD.

His current assignment in the CPD is to a team of first responders to any report of serious or violent crime reported in the City of Cleveland during the hours of darkness.

The legal dispute in this case consists of conflicting Federal, state and local laws concerning military leave for public employees.  The Reservist claims that the interplay of these laws compels the City to pay him his annual Ohio state paid military leave benefit instead of the City's paid military leave benefit.  The Ohio benefit is significantly more valuable.

Graf's non-career military service puts him in a specific class of U.S. citizens: military reservists and citizen-soldiers.  Congress has enacted a powerful federal statute to protect such citizens from adverse effects and treatment in the workplaces of the United States that can occur when reservists have to interrupt their civilian work-cycle, put down their tools and pick up their rifle, in service of their state or country, and go on

"deemed military leave or furlough," whether for a weekend, to take part in peacetime military training or for a much longer period, such as a wartime deployment.  This statute is 31 U.S.C. §4301, *et seq.*, "the Uniformed Services Employment and Reemployment Rights Act of 2003" (hereinafter "USERRA").  There are several predecessor statutes to USERRA, the earliest was 1940.  Much more than a mere anti-discrimination statute, USERRA creates and protects numerous positive rights and benefits, in this case "Employment Rights," of the military reservist.  Relevant to this case are:  the reservist's right to deemed military leave, the protection of state paid military leave benefits and the right to the most favorable comparable leave.  The Reservist alleges that these USERRA rights collectively preempt the conflicting Cleveland Ordinance and CBA and compel the City to provide him with the Ohio benefit.

Ohio passed a law in 1931 creating two (2) paid military leave (hereinafter, "PML") benefits for military reservists who are public employees: now Ohio Revised Code, R.C. 5923.05 "Paid Military Leave for Permanent Public Employees." This statute provides two (2) distinct PML benefits.

First, it allows a reservist employee who attends his scheduled annual military training to accrue an annual bonus payment, hereinafter the "training bonus."  While the reservist performs military service of any type, including specifically his scheduled, annual, reserve military training (one period of summer training--typically fourteen days, plus travel and his eleven weekend drills) the reservist gets a training bonus not to exceed twenty-two (22) PML days (total) per year. R.C. 5923.05(A).  As will be shown below, while this benefit is paid to the reservist by his employer, it is not part of the reservist's wages or salary.  It is an employment benefit a reservist accrues while performing

vii

military training or service for his state or country.  The benefit equals almost an extra month's pay from his civilian employer, in addition to whatever military pay he earned, for a reservist employee who attends all his annual military training.

The second benefit protects certain reservists from economic hardships on long military deployments.  If for any reason a reservist performs military service for longer than one month in a calendar year, such as an extended wartime deployment, the reservist continues to get a paid leave benefit, but at a different, lesser rate.  This rate is "differential pay" only.  R.C. 5923.05(B).  Ohio calculates this "differential pay" as the difference between the reservist's civilian rate of pay and his military rate of pay, per month, not to exceed $500.00 per month.  *Ibid.*  The practical effect of this "differential" PML is to protect newly joined reservists, who typically have a lower military rate of pay than their civilian rate of pay, from financial damage that would result from ordered to a long active duty  deployment (especially if that reservist employee is supporting a family).  Theoretically, the "differential pay" PML benefit ensures that the mobilized reservist continues to receive an amount of money roughly equal to his annual civilian pay rate during a period of extended military service.  Where a soldier has a higher rate of military pay than his civilian pay, the value of his "differential pay" PML is $0.00.  Graf, as a Staff Sergeant with over twenty (20) years of military service, has a higher rate of military pay than his civilian pay.  His Ohio differential pay rate has been $0.00 for most of his service in the CPD.

The Reservist claims that the City has always wrongfully refused to pay him the his R.C. 5923.05(A) annual training bonus, attempting to justify its actions by an unconstitutional ordinance (Cleveland Codified Ordinance §171.57) it enacted in 1982,

and by an illegal provision it has inserted into the collective bargaining agreement (hereinafter "CBA") it has negotiated with the Reservist's labor union. The Reservist observes that under Ohio law a state statute generally prevails over a conflicting municipal ordinance and alleges that the wrongful denial of this statutory employment benefit costs him thousands of dollars in damages every year he is both a Cleveland employee and a drilling military reservist. The rules for resolving a conflict in Ohio between a state statute and a municipal ordinance seeking to legislate on the same issue will be fully discussed the Argument and Law section of this Brief.

The City enacted its own PML Ordinance: CCO §171.57—"Military Service Leaves of Absence; Benefits During Service"—in 1982. The City's ordinance has only one PML benefit: the differential rate. Unlike the Ohio PML statute, Cleveland's PML ordinance does not provide reservist employees who attend their annually scheduled military training a training bonus PML benefit. The Cleveland Ordinance only provides a differential pay benefit to protect certain reservist employees from suffering a financial loss during a long military deployment (i.e. the reservist employees whose military rate of pay is less than their civilian rate of pay), in the same manner as the Ohio statute. The Reservist admits that the City's differential rate is slightly greater in two factors than the Ohio differential rate, as will be discussed below. The City characterizes its PML ordinance as a "made whole" policy, which ensures that no Cleveland reservist employee ever loses civilian pay on military duty. Doc. ID#55-1, at p. 2. The Reservist responds that the Cleveland Ordinance is instead an unconstitutional act passed by a litigious city attempting to wrongfully deprive all its reservist employees of their Ohio statutory bonus for attending annual military training. It forces its employee reservists to go to court to

ix

collect their Ohio PML benefit.  It also conflicts with and frustrates the Ohio General

Assembly's statewide public policy of encouraging all Ohio reservist public employees to

attend their scheduled military training thereby improving military preparedness of the

reserve forces during wartime.

The City has also inserted a boilerplate military leave provision in all their CBAs

with all the labor unions representing their employees that provides what the Reservist

argues is a lesser PML benefit than the one in the Cleveland Ordinance.  This boilerplate

attempts to deprive their reservist employees of their Ohio PML R.C. 5923.05(A) training

bonus.  It appears to state that Cleveland reservist employees who go on military leave do

so "without pay" but also "in accordance with law".  But it says, in a different sentence,

that the C.P.P.A. Members are entitled to a PML benefit of differential pay, only, for

military leave during scheduled annual military training, only.  For any longer periods of

military leave there is apparently no PML and the military leave is "without pay."  Doc.

ID#55-1, at pp.5-6.  This contractual provision is decidedly ambiguous.  It contains

internally inconsistent terms.  It contains a lesser benefit than the Cleveland PML

Ordinance: "without pay" for any extended military deployment, instead of a differential

pay PML benefit!  Two (2) provisions of the Ohio Revised Code, R.C. 4117.10(A) and

R.C. 4117.01(C)(4), appear to render it illegal or inapplicable.

B. Opposing Arguments.

The City appears to move for Summary Judgment on the Reservist's two

remaining causes of action.  The City makes four (4) arguments against the Reservist's

declaratory judgment claim.  The City makes one main argument against the Reservist's

USERRA comparable leave claim.

In his declaratory judgment claim, the Reservist asks the Court to declare that it will enforce the state PML statute over any conflicting Ohio municipal PML ordinances or conflicting PML provisions in municipal CBAs.  The Reservist offers several reasons why this Honorable Court should declare such ordinances are unconstitutional.  The Reservist offers this Court several reasons why it should declare such CBA provisions are illegal or inapplicable.

The City first argues against this claim that the Reservist will not be able to prove "there is a real and justiciable controversy" before this Court because this Court's ruling on the City's Motion for judgment on the pleadings states that: "…Cleveland's Ordinance and Collective Bargaining Agreement [do]   not violate USERRA…" See Doc. ID# 55-1, at p.9.  The Reservist will respond that this is an entirely frivolous argument.  This Court made no such statement in its ruling.  The Respondent will show that this section of the City's argument is frivolous litigation and false statements.

The City's second argument is that there is no "real and justiciable controversy" because the Ohio Supreme Court has already held that the application of Cleveland's ordinance is constitutional under Ohio law, and that CBA military leave provisions like Cleveland's do not violate the Ohio Revised Code.  The Reservist will respond that neither Ohio Supreme Court opinion relied upon by the City addresses either Cleveland's Ordinance or Cleveland's CBA.  Neither provides a controlling precedent that an Ohio municipal ordinance like Cleveland's is constitutional, under the facts and circumstances of the case at bar.  Neither opinion addresses the Cleveland CBAs, nor provides a controlling precedent that they are legal under the Ohio Revised Code, under the facts and circumstances of this case.

The City's third argument is that "…there is no real and justiciable controversy…" because Cleveland's Ordinance does not violate the U.S. Constitution. The City stated that from the Complaint and from the pleadings to date it couldn't determine which constitutional provision was violated or how Congress reserved the power to legislate in the area of military leave.  See Doc. ID#55-1 at pp. 13-14.  The Reservist will respond first that five (5) provisions from the U.S. Constitution and four (4) provisions of the Ohio Constitution collectively render the Cleveland Ordinance unconstitutional.  He will also respond that USERRA shows that Congress clearly preempts the City's Ordinance on deemed military leave.

The City's final argument against declaratory judgment is that because Graf did not file a grievance over his claims in this case, the "…speedy relief…" element of a Declaratory Judgment claim has not been met.  The Reservist will respond that this is another frivolous argument.  Like most CBAs, the Cleveland CBA has boilerplate language about what disputes can be resolved under the Grievance procedure, and what powers to resolve these disputes arbitrators have under the Grievance procedure.  The Reservist will review this language and show that his claims at law are outside the Grievance procedure and that Grievance arbitrators had no power to grant his requested relief.

The City argues against the Reservist's USERRA Comparable Leave claim by saying it is "…simply not supported…" Doc. ID#55-1, at p.15.  The City further mischaracterizes this claim as one of alleged "discrimination".  *Ibidium*.  But the City's main argument is that the Jury Duty benefit paid to its employees by the City is not a greater benefit than the differential pay benefit it pays its reservist employees, because

both are merely "made whole" policies of payment.  The Reservist responds that a Federal judge in the Southern District of Ohio rejected a similar semantic argument, and urges this Court to reject the semantic argument at bar.

The Reservist will conclude this Brief in Opposition by arguing that he has responded to and defeated all the City's arguments made in its Motion.  He further will argue that while the City captions it Motion as one for summary judgment, it organized it and executed it as a motion for dismissal.  At the conclusion of its Brief in Support, the City asks for dismissal of the remaining claims as relief.  The Reservist will ask that this motion to dismiss be denied for being late, out of rule and not entitled to the relief requested.  The Reservist will ask that the City be estopped from arguing that its Ordinance prevails over the state PML statute because they conflict, when the City has argued previously and throughout its Brief that there is no real or justiciable controversy between the parties' claims.  The Reservist will conclude that he has shown that the City is not entitled to Judgment against his Ohio declaratory judgment and USERRA comparable leave claims as a matter of law.

PLAINTIFF'S BRIEF IN OPPOSITION

I.    Procedural History**.**

The Reservist filed his original complaint on 6/21/2016.  The Reservist filed his

first amended Complaint on 10/10/2016.  The City filed an Answer to this complaint on

10/24/2016 and on 10/31/2016 the City filed its second Motion for judgment on the

pleadings pursuant to Fed.R.Civ.P. 12(c).  The Reservists filed their Response and Brief

in Opposition to the 12(c) motion on 11/30/2016.  The City filed a Reply brief on

12/27/2016.

The Court ruled on the City's 12(c) motion on August 4, 2017, granting it in part,

but denying it against 2 of the Reservist's 3 causes of action.  It granted Judgment on the

Pleadings in favor of the City against the Reservist's claim for the denial of a benefit

(Ohio PML) under §4311 of USERRA.  The Court disagreed with the Reservists's

argument that §4311 of USERRA protected the Ohio PML benefit.  The Court denied the

City's motion against the Reservist's claim for Declaratory Judgment under the Ohio

statute because the City failed to even mention that claim in its Motion. It denied

1

judgment against the Reservist's USERRA §4316 Comparable Leave claim because the City apparently did not meet its burden of proof.

On January 9, 2018, the parties filed cross motions for summary judgment on the Reservists' remaining two claims. See Doc. ID# 52-1 for the City. See Doc. ID# 55 for the Reservist. This is the Reservist's Brief in Opposition to the City's Motion.

II. Argument and Law.

A. The Standard For Granting Summary Judgment Is Well Established.

The standard for adjudicating a motion for Summary Judgment is well established in Ohio.

> The standard governing summary judgment is set forth in *Federal Rule of Civil Procedure 56(a)*, which provides:
>
> "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(a)*.
> …
> When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51, …(2000);*…. Summary judgment will not be granted if the dispute about a material fact is genuine, "…that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248…(1986); Barrett v. Whirlpool Corp., 566 F.3d 502, 511 (6th Cir. 2009)*.
>
> Thus, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Brill v. AK Steel Corp.*, Case No. 2:09-cv-534, 2012 U.S. Dist. LEXIS 35251, (S.D. Ohio, 2012). Applying this standard to the case at bar, the Reservist will show that the City has failed to meet its burden of proof and burden of persuasion that the legal issues are so one-sided in favor of the City that it is entitled to judgment as a matter of law against either the Reservist's Ohio declaratory judgment action or his USERRA comparable leave action.

B. <u>The City's 4 Arguments Against The Ohio Declaratory Judgment Claim Fail</u>.

    1) <u>This Court Never Ruled That "…Cleveland's Differential Pay to Plaintiff Graf … Does Not Violate USERRA…"</u>

The City's first sub-section of its argument against the Reservist's declaratory judgment action contains frivolous statements and arguments. The City implies that somehow the Reservists's Ohio declaratory judgement claim legally "overlaps" his Federal USERRA §4311 claim so much that the dismissal of that §4311 USERRA claim in the Motion to Dismiss phase of this pretrial litigation will prevent the Reservist from proving he is entitled to judgment as a matter of law on his declaratory judgment claim during the summary judgment phase of pretrial litigation. The City, as is so often the case with its arguments, offers no logical explanation for this frivolous statement nor makes any citation to valid legal authority in support of it. Doc. #55-1, at pp.9-10. This unsupported argument cannot sustain the City's burden of proof on this Motion.

The Reservist further responds that the USERRA §4311 claim depended on this Court finding that the City's Ordinance unconstitutionally conflicted with the Federal statute USERRA. The declaratory judgment claim depends on this Court finding that the

City's Ordinance unconstitutionally conflicts with the Ohio PML statute.  There is no legal "overlap" between these claims: they present two entirely different types of constitutional law: U.S. vs. Ohio.  The only relevant holding by the Court was that it didn't read USERRA §4311 to protect the Ohio PML benefit.  See this Court's Ruling of 8/4/2017, Doc. #38, at p.7.  Since the Court has allowed the Reservist's USERRA §4316 claim to go forward, it clearly didn't rule that the City's paying the Reservist by the Cleveland Ordinance and CBA doesn't violate <u>any</u> section of USERRA.  See Doc.# 38, pp.8-9.  This frivolous argument by the City fails.

      2.  <u>Neither Of The Ohio Supreme Court Opinions The City Relies On Is A Controlling Precedent On The Dispositive Issues Of This Case.</u>

The main argument of the City's motion concerning the Reservist's declaratory judgment action is its argument that the Ohio Supreme Court "…has already held that application of differential pay ordinances such as Cleveland's, are constitutional under Ohio law."  See Doc.# 55-1, pp. 10-13.  The City describes the Ohio case law on this matter as "well-settled and controlling."  *Ibid.*  The Reservist responds that neither of these statements is true.  First, the Ohio case law on municipal ordinances that conflict with the Ohio PML statute is not well-settled:  the case law is incredibly sparse and the authority is split.  Second, neither Ohio Supreme Court Opinion the City tries to rely on offers a controlling precedent that either the Ohio municipal PML Ordinances are constitutional or that "differential-only" PML provisions in municipal CBAs are legal or applicable under the Ohio Revised Code.  Third, the Reservist will set forth the current tests the Ohio Supreme Court applies to determine whether an Ohio municipal ordinance may be adjudicated to prevail over a conflicting state statute on the grounds of "Home

4

Rule Authority."  He will show that neither of these two opinions used these tests and that if they are applied to the facts and law of the case at bar, the Cleveland Ordinance will fail them.

The Ohio case law concerning whether Ohio municipalities may enact or enforce municipal ordinances that conflict with the Ohio PML statute is not "well settled":  the case law authorities are terribly sparse and their authority split.  For the first thirty (30) years of the existence of the Ohio PML statute there were only two reported challenges to the statute by municipal ordinances and the Ohio PML statute prevailed over the ordinances in both.  In his motion for Summary Judgment, the Reservist recited the relevant Ohio case law from 1931 (the date the Ohio PML statute was enacted in its original form) through 1961 (the year prior to the first reported case law authority allowing an Ohio municipal ordinance conflicting with the Ohio PML statute to prevail over that statute).  The Reservist discussed these thoroughly in his Motion for Summary Judgment.  Doc.#55, at pp.  To avoid repetition and to save space the Reservist incorporates that discussion herein as if reprinted below *verbatim*.  He argues further that in *Otten v. Cincinnati*, 10 Ohio Ops. 276, at 277-278 (Hamilton Cty., 1937) a Common Pleas Judge held that the Ohio PML statute was both constitutional and a general law (as that term is used in the Ohio Constitution, directing that such prevails over any conflicting municipal ordinance).  It also stated

> The state by this legislation intends to encourage military and naval
> preparedness.

*Otten*, at 280.  In that case Cincinnati had been enforcing a municipal paid vacation ordinance against a reservist employee, construing the PML statute as an unconstitutional, excessive, 2nd paid vacation.  Cincinnati claimed the reservist was trying

to get twice the paid vacation he was entitled to and refused to pay him his R.C. 5923.05(A) PML training bonus in excess of his unexpended City paid vacation. The Court held that while an Ohio city could enact an ordinance defining its civil servants' paid vacations, under its Home Rule Authority, it would have to still give their reservist employees their full PML training bonus if they attended their annual military training, in addition to allowing them a full municipal paid vacation. *Otten,* Syllabus, paragraph 2.

In 1960 an Ohio Attorney General Opinion addressed the question (from then State Auditor James A. Rhodes) of what should happen in a case where a municipal employee who was an Ohio Guardsman and was receiving his Ohio PML pursuant to R.C. 5923.05(A), and where the municipal employer enacted a differential-only PML ordinance? The Attorney General (stating that *Otten* was the controlling case law) wrote back to Auditor Rhodes:

> …To allow a municipal regulation, such as here considered, to defeat the purpose of Section 5923.05, *supra*, would tend to discourage participation in the armed forces programs and would not be in the interests of public safety. Accordingly, I conclude that the provisions of Section 5923.05, *supra*, are of a police or similar nature and take precedence over the provisions of a municipal corporation in conflict therewith.

> Answering your specific question, therefore, it is my opinion and you are advised that an employee of the state or one of its political subdivisions is entitled under Section 5923.05, Revised Code, to a leave of absence for military service without any loss of pay from his employer for a period of not more than 31 days in any one calendar year, regardless of the fact that such employee may be paid for his military service; and the provisions of said section take precedence over any conflicting provisions of a municipal corporation, chartered or otherwise.

Ohio Attorney Gen. Opns., No. 1468, dated 6/17/1960, at p.423.

During the next fifty-six years of the existence of the Ohio PML statute, from 1962 to the present, there were only four (4) reported court opinions concerning

municipal ordinances conflicting with the Ohio PML statute.  Only two (2) of these are Ohio Supreme Court opinions (two are decisions of the Summit County Court of Appeals).  The Reservist argues that the case law is therefore not well-settled, it is terribly sparse:  five reported opinions in 86 years, and only two of them are state supreme court opinions, the most recent rendered in 2001.

Furthermore, the authority is split:  until 1961 the state PML statute was held to prevail over conflicting municipal ordinances.  Since 1962 conflicting municipal ordinances have been allowed to prevail over the state PML statute.  The Reservist argues the case law authority since 1962 is fundamentally flawed since it doesn't address the prior Ohio case law.  These opinions read as if the 1962 Summit County Court of Appeals decision was a case of first impression in Ohio.  That violates the doctrine of *stare decisis*!

The Reservist further argues that the Ohio Supreme Court opinions the City attempts to rely on do <u>not</u> provide it with a controlling precedent in its favor on any dispositive issues at bar identified in the City's Motion.  *Northern Ohio Patrolmen's Benevolent Assn., et al., v. Parma*, 61 Ohio St.2d 519 (Ohio, 1980) (hereinafter *"Parma"*) does not provide a controlling precedent in favor of the City that the Ordinance is constitutional under Ohio law.  *The State Ex Rel. Fraternal Order of Police, Ohio Labor Council, Inc., et al, v. Sidney*, 91 Ohio St.3d 399 (Ohio, 2001) (hereinafter *"Sydney"*) does not provide it with a controlling precedent in favor of the City that the CBA PML provision is legal or applicable under the Ohio Revised Code chapter on public employee collective bargaining agreements.

7

The three reasons the *Parma* opinion does not provide a precedent that the Cleveland Ordinance is constitutional under Ohio law is that: (1) the holding pertains to non-chartered municipalities and Cleveland has a charter; (2) the Court presumed the constitutionality of the statute instead of analyzing and ruling on it; and (3) in a footnote the *Parma* Court accurately states the test for the constitutional limits on the powers of local self-government under Ohio Home Rule Authority, but doesn't apply it to the holding.  If that test is applied to the case at bar, Cleveland's Ordinance fails it.

The *Parma* opinion is completely distinguishable from and inapplicable to the facts of the case at bar.  It has been alleged, and Cleveland has admitted, it is a chartered city.  Doc.# 55-1, at p.10.  Both paragraphs of the *Parma* Syllabus pertain to non-chartered municipalities.  *Parma*, *supra*, at the Syllabus, ¶¶1-2.  ¶2 of the Syllabus says a non-chartered city can enact a PML ordinance that conflicts with the Ohio PML statute. The "critical issue" of the opinion concerns the authority of a non-chartered municipality. *Ibid.,* at p. 378.  The facts of *Parma* are that several reservist employees "challenged" the validity and constitutionality of the Parma PML ordinance.  *Parma,* at p.376.  After setting out the facts of the case the Court, without analysis, "presumed" the constitutionality of both the ordinance and the statute.  *Parma*, at 377.  In the case at bar, by contrast, the Reservist is actively litigating the constitutionality of the Cleveland Ordinance in his Motion for summary judgment:  it's the main point of his Motion.  Doc# 55, at pp.  Finally, *Parma* states that the Home Rule Provision (of the Ohio Constitution) is itself a source of constitutional authority for local self-government powers.  *Parma*, *supra*, at 381.  A footnote in that text states the Ohio rule establishing limitations on those powers.  The Court didn't apply it, however.  This rule is

8

> The interpretation of section 3 (of Art. XVIII ), as of 1954 seemed clear: (1) While local police regulations were subject to statutory control under the conflict clause, the non-police powers were superior to conflicting state statutes <u>unless state power was found in a specific constitutional provision</u>…

*Ibid.*, at p.386, FN3, <u>emphasis added</u>.  The Reservist at bar now requests this rule be applied to the case at bar.  The state power exercised by the enacting of the state PML statute is the power of training the Ohio militia.  This power is found in specific constitutional provisions of the U.S. and Ohio Constitutions that collectively share the Militia powers between the U.S. Congress, the U.S. President and the state of Ohio, and which further reserve the power of training the Ohio Militia to the state of Ohio:  Art. I, §8; Art I, §10; Art. II, §2; and the Second Amendment, of the U.S. Constitution; and Art. IX, §§1 and 4-5 of the Ohio Constitution.  See the Reservist's Motion for Summary Judgement, *supra*.  Therefore, the non-police powers of self-government that create the City of Cleveland's power to enact and enforce its PML Ordinance will NOT be superior to the specific Constitutional powers underlying the Ohio PML statute.  Thus *Parma* does NOT provide a controlling precedent that enforcement of the Cleveland PML Ordinance over the Ohio PML statute is supported by Ohio constitutional law:  the opposite is true.  The footnote cited *supra* dated itself to 1954.  The *Parma* opinion was published in 1980.  But this rule has been cited as valid law much more recently.  See "Municipal Home Rule", Members Only, Vol.128, Issue 8, 1/26/2010, LSC Staff of the Ohio General Assembly, at pp.1 and 7-9.

The other Ohio Supreme Court opinion the City relies on is the *Sidney* opinion, *supra*, to provide a precedent that the Cleveland CBA will prevail over the PML statute. In that case the Plaintiff was an employee reservist, a police lieutenant and an airman.

9

Sidney (Ohio) enacted a "differential only" PML ordinance similar in wording and effect to the one at bar.  It also put a differential only PML provision in its CBA with the plaintiff's union, similar in effect to the Sidney ordinance's PML provision. This opinion illustrates one chapter of the fascinating history of the ongoing Ohio Constitutional battle over statewide enforcement of the state PML statute between the Ohio Adjutant General and the Ohio Attorney General on the one hand, acting through the Ohio General Assembly, and a previous edition of the Ohio Supreme Court, on the other, acting through their own judicial activism.  After the *Parma* opinion, and another Ohio Supreme Court opinion limiting an irrelevant aspect of the PML statute (to the case at bar), were published, the above-mentioned agencies of the Ohio executive branch successfully importuned the General Assembly to legislatively overturn the second anti-state PML Opinion and to embed two (2) provisions in the Ohio Revised Code to protect the Ohio PML statute from future conflicting CBAs.  The Court appears to mock these efforts in *Sidney*.  It describes the enactment of R.C. 5923.05(F)[1] in 1997 specifically to prohibit CBAs from adopting a lesser PML benefit from R.C. 5923.05(A).  *Sidney*, *supra*, at pp.400-401.  Then in holding that the Sidney CBA PML provision prevailed over the state PML statute anyway, it entirely ignored the effect of R.C. 5923.05(F) in its holding and additionally judicially invalidated R.C. 4117.10(A) (which had the same operative text as R.C. 5923.05(F), and was enacted during the same period).  *Sidney* recited the operative provisions of R.C. 4117.10(A), emphasized key text in italics, and then deliberately read two (2) "or"'s as "and"s and further read an ellipsed-out "and" as an "unless". *Ibid.* at 402.  This jurisprudence openly violated the Revised Code provisions that limit how Ohio courts can construe its text.

---

[1] Currently R.C. 5923.05(G)

Then, almost immediately after the *Sidney* opinion was published, the General

Assembly further enacted (effective 2002) a third code provision designed to prevent

Ohio public employee CBAs from limiting the Ohio PML statute: R.C. 4117.01(c)(4).  It

states:

> **Chapter 4117:  PUBLIC EMPOYEES COLLECTIVE BARGAINING**
>
> **4117.01 Public employee's collective bargaining definitions.**
>
> As used in this chapter:
> ….
> (C)  "Public employee" means any person holding a position by appointment or employment in the service of a public employer…except:
> …
> (4) Persons who are members of the Ohio organized militia, while training or performing duty under section 5919.29 or 5923.12 of the Revised Code;

Ohio Revised Code, Lawriter (2018).  The Reservist argues this provision renders the

Cleveland CBA PML provisions inapplicable and thereby prevents Ohio municipalities

from applying illegal CBA provisions to effect a PML rate at which their employee

reservists would accrue a training bonus that would be less than the rate prescribed in

R.C. 5923.05(A).  It also creates a new section of the Revised Code preventing CBAs

from reducing or avoiding the Ohio PML statutory training bonus, against which the

*Sidney* opinion cannot be used as controlling precedent.  The Reservist argues that this

shows not only the General Assembly's clear constitutional legislative intent to protect

the enforcement of the PML statute, but also to discourage further anti-reservist judicial

activism in this area.

The Ohio Supreme Court currently uses a three-step analysis to determine

whether a municipal ordinance can prevail over a conflicting Ohio statute, where a city

11

invokes its "Home Rule" authority, as Cleveland has in the case at bar.  When this test is

applied to the facts of the case at bar Cleveland's PML Ordinance cannot pass it.

### Article XVIII – The Home Rule Amendment
### …

> A home-rule analysis presents a three-step process.  *Am. Fin. Servs. Assn.,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶23-24; See also *Mendenhall v. Akron,* 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶17.  The first step is to determine whether the ordinance at issue "'involves an exercise of local self-government or an exercise of local police power.'" *Am. Fin. Servs.* At ¶23, quoting *Twinsburg v. State Emp. Relations Bd.* (Ohio, 1988).  39 Ohio St.3d 226, 228, 530 N.E.2d 26, overruled on other grounds, *Rocky River v. State Ep. Relations Bd.* (1989), 43 Ohio St.3d 1, 20, 539 N.E.2d 103.  If the ordinance is one relating solely to matters of self-government, "the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction."  Id.
>
> The second step, which becomes necessary if the local ordinance is an exercise of police power, requires a review of the statute to determine whether it is a general law under our four-part test announced in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.  See also *Mendenhall,* 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶18.  If the statute qualifies as a general law under this test, the local ordinance must give way if it conflicts with the general law.  Id.
>
> The final step in the analysis, therefore, is to determine whether the ordinance conflicts with the statute, i.e. "whether the ordinance permits or licenses that which the statute forbids…, and vice versa."  *Struthers v. Sokol* (Ohio, 1923), 108 Ohio St. 263, 140 N.E. 519, at paragraph two of the syllabus; see also *Marich v. Bob Bennet Constr. Co.,* 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 30.

*Ohioans for Concealed Carry, Inc. et al., v. City of Clyde*, 120 Ohio St.3d 96, 2008-Ohio-

4605, at ¶¶22-26.  See also *City of Cleveland v. The State of Ohio*, 138 Ohio St.3d 232

(Ohio, 2014), 2014-Ohio-86, at ¶¶7-9; *State Ex Rel. Morrison v. Beck Energy Corp.*, 143

Ohio St.3d 271, at 274-276 (Ohio, 2015).  Applying this rule to the facts of the case at

bar, we see that if the result of the first step were that the Ordinance was a matter of local

self-government, as the City has argued, it would be unconstitutional for the reason

discussed above (the state statute exercises a power specified in a written grant of

12

constitutional power and therefore prevails over a power of local self-government).  If, on the other hand, the result is that it is an exercise of police power, then we must go on to test whether the statute is a general law.

The ordinance is a police power.  Police power ordinances "…protect the public health, safety, or morals or the general welfare of the public." *Beachwood v. Cuyahoga Cty. Bd. Of Elections*, *supra*, ¶1 of the syllabus.  The Reservist argues that the City's own claims are that the Ordinance protects its reservist employees from economic hardships and encourages participation in the reserves during any extended military service deployment.  Therefore this Court must apply the test to see if the state PML statute is a general law.  It is the four-prong *Canton* test, referred to *supra*.

### General-Law Analysis

…As we have stated, to be a general law, "'a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.'" *Am. Fin. Servs. Assn.*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶32, quoting *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.

*Ohioans For Concealed Carry, Inc., v. Clyde*, *supra*, at ¶38.  The Ohio PML statute is clearly part of a statewide and comprehensive legislative enactment meant to apply uniformly to all parts of the state because it addresses permanent public employee reservists and their political subdivision employers without restrictions, geographic or otherwise, therefore it meets the first two prongs of the *Canton* test, *supra*.  It sets forth positive police regulations, instead of merely purporting to limit the legislative power of municipal corporations to set forth police regulations, mandating both the training bonus and the extended service differential pay by public reservist employers, so it meets the

13

third prong of the *Canton* test. Finally, it proscribes a general rule of conduct upon Ohio municipal corporate citizens, as stated above, meeting the fourth and final prong of the *Canton* test. Since the Ohio PML statute satisfies the *Canton* test it is a general law and prevails over the Cleveland Ordinance. The final step is to see if the ordinance conflicts with the statute. It does: the Statute provides the training bonus and differential pay benefits, the Ordinance only provides the differential pay benefit and precludes the training bonus. Because the Ordinance is a police power that conflicts with the statute, which is a general law, the Cleveland PML Ordinance will give way to the Ohio PML statute.

Contrary to what the City implies, the Ohio Supreme Court would not find the Cleveland PML ordinance constitutional. The *Parma* opinion does not provide a controlling precedent concerning this case. It is almost forty (40) years old. It chiefly concerned whether non-chartered municipalities had home-rule authority, while Cleveland is a chartered city. *Parma* presumed constitutionality of the ordinance before it, while the Reservist will show below he is actively litigating Cleveland's. The *Sidney* case is not a controlling precedent that the PML provision of the Cleveland CBA will prevail over the statute because after *Sidney* was decided the Revised Code was changed so that public employee CBAs don't apply to Reservists performing military service. Most importantly, the Ohio Supreme Court now applies a three-part test when a municipality invokes its Home-Rule authority to assert that their ordinance constitutionally prevails over a conflicting Ohio statute. The Cleveland PML Ordinance will fail that test against the Ohio PML statute.

14

3. <u>Cleveland's PML Ordinance Violates the U.S. and Ohio Constitutions</u>.

This argument is made in detail in the Reservist's Motion for Summary Judgment. See Doc. ID# 55.  The Reservist incorporates that argument in this Brief in Response, as if set reprinted *verbatim* below.  The provisions of the U.S. Constitution that it violates are Art. I, §8, Art. I, §10, Art. II, §2, the Second Amendment and Art. VI (the supremacy clause). The provisions of the Ohio Constitution it violates are Art. IX, §§1 and 4-5 (the Ohio Militia Article).  Collectively, these provisions enumerate the War powers of the United States, which include the Militia Powers.  All the War powers are reserved to the Federal Government except for the power to train the Ohio Militia, which is reserved to the state of Ohio.  The Ohio Constitution and the Ohio Revised Code limit the power to control the Militia to the state government in Ohio:  to the Governor as Commander, to his Adjutant General and his staff and officers, and also to the Ohio General Assembly. No power to train the Ohio Militia is reserved or delegated to Ohio political subdivisions. Therefore the Reservist has proven beyond a reasonable doubt that the Ohio General Assembly has the constitutional authority to enact a statute granting a training bonus to Ohio Militia and reservists who attend their annual training in the name of military preparedness during a time of war.  However this policy displeases the City of Cleveland, the Reservist has also proven beyond a reasonable doubt that Cleveland can point to no provision of the Ohio or U.S. Constitution, or in its written Charter, that empowers it to enact ordinances that deny Ohio Militia or reservists deemed military leave to attend military training or to lessen their annual bonus for attending it.

4. <u>There is No "Adequate Remedy" Graf Has Chosen Not To Exercise Such That He Can't Prove The Need For "Speedy Relief"</u>

15

The City implies that the Reservist could get satisfaction for his claims at law in this case through the grievance process set forth in the most recent CBA between his Union and the City.  See Doc. ID#52-1, at p.14.  The City implies further that because Graf has not filed a grievance for his Ohio PML, he will not be able to prove the need for the "speedy relief" element of his declaratory action claim.

This is another frivolous argument of the City.  The grievance procedure is set out in the most recent CBA, images which can be found in the record.  See CBA of 2013-2016, at pp. 42-45.  It is indisputable that Graf seeks only two things in his Complaint: a claim at law for his Ohio PML, and a claim at law (through USERRA) for paid military leave.  It is also indisputable that the Grievance procedure of his CBA cannot provide this relief.  It is a four-step procedure where Graf would start out with a Union Representative and meet with the Commander of his Administrative Unit.  The next step would be for Graf and his Union President to meet with the Chief of Police.  The next step would be a meeting with the Safety Director of Cleveland.  Then Graf would ask the Union to refer his Grievance to the Labor Relations Manager and ask for Arbitration of his Grievance before a panel of Arbitrators.  But these arbitrators would not have jurisdiction over his claims at law for state and Federal statutory rights and benefits outside of the illegal, inapplicable, unsatisfactory CBA.

> In the event a grievance goes to arbitration, the arbitrator shall have jurisdiction only over disputes arising out of grievances as to the interpretations and/or application and/or compliance with the provisions of this Contract…and in reaching his decision, the arbitrator shall have no authority (1) to add or subtract from or modify in any way any of the provisions of this contract; (2) to pass upon issues governed by law, (3) to make an award in conflict with law.

16

Relevant text of Article XXII "Grievance Procedure," at "Step 4" p. 44, the CBA

between the C.P.P.A. and the City of Cleveland, effective 2013-2016, *supra*.  The

Grievance procedure of the CBA does not have jurisdiction over the Reservist's

Declaratory Judgment claim and the outside Counsel for the City know or should know

that, since they drafted the CBA.

C. The City's Confusing Argument Does Not Entitle it to Judgment as a Matter of Law
   on The Reservist's Comparable Leave Claim.

In section V.C of the City's Brief in Support of its Motion for Summary Judgment

the City moves for summary judgment against the Reservist's third cause of action: his

USERRA §4316(b)(1) "comparable leave" claim.  DOC ID#____, at pp. 15-19.  As the

movant the City correctly observes that it has the burden of showing that (1) there are no

genuine issues of material fact in dispute; and that (2), it is entitled to judgment as a

matter of law.  *Id*., at 15. Graf responds through Counsel that the City has failed to meet

its burden of proof and of going forward in its motion on this cause of action.  First, he

will respectfully direct this Court's attention to the fact that the City doesn't make any

kind of argument of law either against the general validity of the USERRA §4316

comparable leave claims or against their specific applicability to this jurisdiction or to the

case at bar.  He will then ask this Court to deny the City's motion for summary judgment

against this claim.  Second, the Reservist will show that given certain undisputed facts in

this case and given the undisputed terms of the most recent CBA between the City and

his Union, there is a genuine dispute of one or more material issues of fact.  He will show

that reasonable minds could agree that the CBA's Jury Duty benefit is the most favorable treatment given to Cleveland employees, of the leaves or furloughs arguably comparable to deemed military leave for the reservist C.P.P.A. members.

Graf respectfully draws this Court's attention to the fact that nowhere between pages 15 and 19 of section V.C. of its brief in support of its motion for summary judgement does the City challenge the legal validity of a USERRA comparable leave claim nor of the specific application of it to the case at bar or in the Northern District of Ohio. On p. 15 the City recites the relevant USERRA text, without analysis. On p. 16 the City recites the relevant Code of Federal Regulations passages (which elaborate on the USERRA text), without analysis. On p.17, the City finally makes several fact-based arguments that Reservist will have proof proving his theory that jury duty provides a "better benefit" than military leave. On p.18 the City addresses other anticipated theories of recovery for the Reservist, which he did not making in his motion. On p.19 the City addresses other anticipated arguments the Reservist did not make. The City also makes its Conclusion, concluding by requesting as relief, "Plaintiff Graf's Complaint should be dismissed in its entirety." Since the City did not make any legal arguments in this section Graf asks this Court to conclude that the City's did not meet its burden of showing entitlement to judgment on his comparable leave claim as a matter of law. Merely reciting the applicable law to a claim, without analysis, does not prove entitlement to judgment.

The City makes two main arguments of fact against Graf's comparable leave claim on p.17 of its Brief in Support. First, it implies that the since the CBA jury duty provision compels the non-military employees to surrender their county jury duty

paycheck to the City to get a city check for fully paid leave for their time on duty, any USERRA §4316 relief fashioned by this Court should have the Reservist exchange his military paycheck for a city pay check for his period of fully paid leave. The City in this case is intentionally confusing the issue to try to almost stand the rule on its head. USERRA §4316 doesn't say the union members have to trade their employer equal numbers of paychecks for comparable benefits, it says that the employer must pay the Reservist the same amount of dollars it provides another non-military employee, if it's a bigger benefit for comparable leave.

Let's apply the rule to the case at bar and compare the jury duty benefit to the military differential pay benefit, to see which is "most favorable." Let's compare Graf's 2013 14-day summer annual training military leave with John Smith's 2013 14-day jury duty leave that same summer, when they were both "Patrol Officer IIIs". The CBA effectively pays union members who go on jury duty their full pay rate minus their jury duty pay rate. So, the chart on p.48 of the CBA says Smith's "bi-weekly" pay rate was "$1885.2030. Cuyahoga County pays jurors $27.00/day. So, the value of Smith's CBA jury duty benefits that summer was $1885.2030 – (14x$27.00)) or $1,507.20. Compare that to the value of Graf's differential-only PML benefit. Graf received the same bi-weekly pay rate, but to calculate the value of his differential pay military leave benefit he had to effectively subtract from it his military pay rate, which is higher than his civilian pay. Therefore, the City paid him a benefit of $0.00 for his military leave for that time. Graf has therefore raised a genuine dispute of a material issue of fact as to whether jury duty leave under the CBA is not a "more favorable" comparable leave benefit than his differential pay-only deemed military leave. Therefore, since said issue of fact exists,

19

and since the City has not proven it is entitled to judgment on this comparable leave claims as a matter of law, the Reservist asks this Court to deny the City's motion for summary judgment on this claim.

Respectfully submitted,

S/ Daniel G. Morris
Daniel G. Morris, Esq. (0040449)
The Law Offices of D. G. Morris, LLC
4205 Woodbridge Ave.
Cleveland, Ohio  44109
Tel:  (216) 965-1325
E-mail:  dmorrislaw18@ameritech.net
Attorney for the Plaintiff